AO 106 (Rev. 04/10) Application for a Search Warrant                    AUTHORIZED AND APPROVED/DATE: Drew Davis 1/8/2024

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

FILED
JAN 09 2024
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

In the Matter of the Search of                    )
*(Briefly describe the property to be searched*   )
*or identify the person by name and address)*     )   Case No. M-24-25-AMG
A GRAY IPHONE 11 PRO MAX, IMEI#                   )
352856116069740, located at FBI Oklahoma City, 3301 )
W. Memorial Rd., Oklahoma City, Oklahoma          )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute a quantity of cocaine |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Jae Kang, Task Force Officer, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 1/9/2024

_____
Judge's signature

City and state: Oklahoma City, Oklahoma

AMANDA MAXFIELD GREEN, U.S. Magistrate Judge
Printed name and title

# THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Inspector Jae Kang, Task Force Officer (TFO) of the Federal Bureau of Investigation (FBI), United States Department of Justice, being duly sworn, depose and state as follows:

1.  I have been employed with the Oklahoma City Police Department (OCPD) since March of 1995. I have been a TFO with the FBI since March 2005. I am currently assigned to the Oklahoma City Division, where I have been involved in a wide variety of investigative matters, including numerous investigations targeting large criminal enterprises, most of which involved the unlawful distribution of narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846. As part of my investigative experience as an FBI TFO, I have executed search and arrest warrants, conducted physical surveillance, coordinated controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. As part of my tenure while both assigned and in support of the FBI, I was trained on the use and procedures

for Title III (T-III) wiretaps, including the monitoring of calls and making determinations regarding pertinent/non-pertinent calls, privileged calls, and minimization of calls. Additionally, I have been involved in multiple T-III investigations as well as performed a variety of duties during the course of federal wiretaps. These duties include but are not limited to monitoring calls and making determinations regarding pertinent/non-pertinent calls, privileged calls, and minimization of calls. Lastly, as part of my training and experience, I have become familiar with how drug dealers often use coded language to discuss drug transactions in attempts to disguise the true nature of those transactions.

2.   I am currently investigating **John Calvin Moore, Jr. (MOORE)** for, *inter alia*, possession of controlled substances with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). I am submitting this Affidavit in support of a search warrant authorizing a search of MOORE's cellular telephone: a gray iPhone 11 Pro Max, IMEI# 352856116069740 (hereinafter **SUBJECT PHONE**), as further described in **Attachment A**, which is incorporated into this Affidavit by reference. The FBI has custody of the SUBJECT PHONE in Oklahoma City, Oklahoma. I am submitting this Affidavit in support of a search warrant authorizing a search of the **SUBJECT PHONE** for the items specified in **Attachment B** hereto, wherever they may be found, and to seize

all items in **Attachment B** as instrumentalities, fruits, and evidence of the aforementioned crimes.

3. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant. The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records.

## PROBABLE CAUSE

4. On December 22, 2023, OCPD Officer C. Alexander of the Criminal Interdiction Team of Central Oklahoma (CITCO) was traveling east on Interstate 40 near S Triple X Rd., Oklahoma City, Oklahoma. This portion of the highway has a posted speed limit of 70 mph. At approximately 12:47 p.m., Officer Alexander observed a gray Cadillac SUV with Arizona tag CMH3232 traveling east in front of him and passing surrounding vehicles leading Officer Alexander to believe that the vehicle was exceeding the posted speed limit. Officer Alexander began pacing the vehicle and observed that its traveling speed was approximately 76 mph—six miles-per-hour over the posted limit. At

that time, Officer Alexander engaged his emergency lights and conducted a traffic stop on the gray Cadillac.

5. As Officer Alexander approached the passenger side of the vehicle, he noticed several gift-wrapped boxes in the back of the vehicle and a bag that was partially opened with clothes inside of it. Officer Alexander then made contact with the driver, **MOORE**, who was the sole occupant of the vehicle. **MOORE** informed Officer Alexander that he was sick and not feeling well and provided his license. Officer Alexander observed that the license was issued from North Carolina and asked **MOORE** if he still lived in North Carolina. **MOORE** stated that he did. **MOORE** told Officer Alexander that he was driving back home to North Carolina from California, after visiting family for about a week. Based on his training and experience, Officer Alexander found this suspicious because **MOORE** did not appear to have enough luggage or personal clothing in the vehicle for a week-long stay. Additionally, when **MOORE** provided the rental agreement to Officer Alexander, the officer noted that **MOORE** had rented the Cadillac in Ontario, California, on December 20, 2023, and that he was scheduled to return it back to Ontario, California, on December 28, 2023. The officer believed that this was inconsistent with **MOORE**'s explanation that he was driving cross-country to go back home to North Carolina after spending a week in California.

6. At this point, Officer Alexander had **MOORE** step out of the vehicle, and placed him in the backseat of his unmarked vehicle while he conducted a check of **MOORE's** license and the vehicle's license plate. As these checks were taking place, **MOORE** told Officer Alexander that the presents in the vehicle were for his girlfriend's kids and that they had flown home to North Carolina from California. **MOORE** explained that he was driving home because he was sick. **MOORE** told Officer Alexander that he did not wrap the presents and did not know what was in the boxes.

7. Officer Alexander requested a state certified drug dog to his traffic stop. OCPD Sgt. Dake arrived thereafter and had his state certified canine "Dirk" conduct an open-air screen around the vehicle. "Dirk" positively alerted on the vehicle, resulting in a probable cause search of the Cadillac SUV. Inside the wrapped packages, law enforcement located approximately forty (40) individually wrapped bundles of methamphetamine, with a total package weight of approximately 42.14 lbs., and fourteen (14) individually wrapped bundles of cocaine, with a total package weight of approximately 38.64 lbs. Law enforcement also recovered a .45 caliber pistol inside a brown leather backpack on the front passenger floorboard of the vehicle. **MOORE** was subsequently placed under arrest.

8. During the initial stop, **MOORE** had the **SUBJECT PHONE** on his person. At Officer Alexander's direction, **MOORE** had left the **SUBJECT**

**PHONE** in the Cadillac SUV when he had been taken back to Officer Alexander's vehicle. As a result of the items found in the SUV, law enforcement placed **MOORE** under arrest, and the **SUBJECT PHONE** was seized from the vehicle.

9. Based on my training and experience, I am aware that individuals involved in trafficking illegal narcotics often use cell phones to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal narcotics. Such cell phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug trafficking offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, and videos. This is particularly true in cases like this, where an individual such as **MOORE** is traveling long distances with controlled substances. In such instances, the transporter often maintains contact with his associates to ensure that the transportation goes smoothly.

## CONCLUSION

Based on the above information, I submit that there is probable cause to believe that a violation of 21 U.S.C. § 841(a)(1) has occurred, and that evidence, fruits, and instrumentalities of this offense are located on the **SUBJECT PHONE**. Therefore, I respectfully request that this Court issue a search

warrant for the **SUBJECT PHONE**, described in **Attachment A**, authorizing the seizure of the items described in **Attachment B**.

_____
Inspector Jae Kang
Task Force Officer
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this 9th day of January 2024.

_____
Amanda Maxfield Green
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is a gray iPhone 11 Pro Max cell phone, IMEI# 352856116069740 (hereinafter **SUBJECT PHONE**). The **SUBJECT PHONE** is currently located at FBI Oklahoma City, 3301 W. Memorial Road, Oklahoma City, Oklahoma. A photo of the **SUBJECT PHONE** is below:



This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

1. All records on the **SUBJECT PHONE** described in **Attachment A** that relate to violations of 21 U.S.C. § 841 and 21 U.S.C. § 846 involving **MOORE**, including but not limited to:
   a. lists of customers and co-conspirators and related identifying information;
   b. communications and evidence of communications, including but not limited to call logs, voicemails, text messages, multimedia messages, emails, and messages sent through applications, between the user of the **SUBJECT PHONE** and customers and co-conspirators;
   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
   e. any information recording **MOORE's** schedule or travel, including but not limited to location information; and
   f. all bank records, checks, credit card bills, account information, and other financial records.
2. Evidence of user attribution showing who used or owned the **SUBJECT PHONE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

   As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.